ANTONIO DEBIÉN, JR., demandante y apelado, *v.* JUNTA DE CONTABILIDAD, compuesta por su Presidente PEDRO R. RAMÍREZ y sus miembros LUIS H. ALFAU, PEDRO E. PURCELL, JAIME A. MONTOYA y ALEJANDRO VÁZQUEZ, demandada y apelante.

Número 11023.
*Sometido:* 23 de noviembre de 1953. *Resuelto:* 24 de febrero de 1954.

*Hon. Secretario de Justicia José Trías Monge y Omar Cancio
Sifre, Procurador Auxiliar,* abogados de la apelante; *Canales & Segarra,* abogados del apelado.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

El 23 de noviembre de 1945 Antonio Debién, Jr., radicó una petición ante la Junta de Contabilidad de Puerto Rico en la que solicitaba de la Junta que le registrara como, y le expidiera licencia de, contador público, bajo las disposiciones de las secciones 6 y 8 de la Ley núm. 293 de 15 de mayo de 1945 (pág. 1099), conocida como la "Ley de Contabilidad Pública de Puerto Rico". La Junta dictó una resolución denegando la petición, por el fundamento de que el solicitante no se dedicaba a la práctica de la contabilidad pública como su principal ocupación en la fecha determinada por la ley. El peticionario presentó una moción de reconsideración el 22 de noviembre de 1949 y, finalmente, se celebró una vista ante la Junta el 27 de agosto de 1952, habiendo declarado el peticionario y habiendo él presentado en evidencia varias declaraciones juradas y otra prueba documental. El 26 de noviembre de 1952 la Junta dictó una resolución declarando sin lugar la moción de reconsideración y exponiendo, en parte, lo siguiente:

"De las nuevas declaraciones prestadas por el peticionario y de la evidencia sometida se desprende que el Sr. Debién fué empleado de la firma 'Tybor Stores, Inc.' por un período de tres años aproximadamente, y que dedicaba la mayor parte de las horas normales de trabajo en el desempeño de sus funciones como empleado de dicha firma.

"Por lo antes expuesto, la Junta entiende que, a la fecha de la aprobación de la Ley núm. 293 de 1945, el Sr. Antonio Debién, Jr., no se dedicaba a la práctica de la contabilidad pública y sí a la práctica de la contabilidad privada, como su principal ocupación."

Esa resolución fué notificada al peticionario el día 3 de diciembre de 1952.

El día 23 de diciembre de 1952 el peticionario radicó en la sala de San Juan del Tribunal Superior una petición de *mandamus* contra la Junta, en que solicitaba que se ordenase a ésta el que registrase y expidiese al demandante y peticio-

nario un certificado de contador público, a tenor con las disposiciones de la Ley núm. 293 de 15 de mayo de 1945.

El día 30 de enero de 1953 la Junta presentó una "Moción de Desestimación o para que se Dicte una Sentencia Sumariamente", por no aducir la demanda "hechos constitutivos de causa de acción" o, en la alternativa, porque no existía controversia real sobre los hechos, ya que los hechos habían sido ventilados administrativamente ante la Junta y la única cuestión planteada en el recurso de mandamus era al efecto de si las resoluciones de la Junta estaban o no sostenidas por evidencia sustancial, existiendo solamente una cuestión de derecho. El tribunal a quo declaró sin lugar esa moción de la demandada, indicando que consideraba el recurso de mandamus como una solicitud de revisión, tal como se hizo en el caso de *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377, siendo aplicable el procedimiento de revisión provisto en la sección 11 (*j*) de la Ley de Contabilidad Pública, no siendo aplicable la Regla 56 de Enjuiciamiento Civil.

Posteriormente, los autos contentivos del récord administrativo, o sea, de los procedimientos habidos ante la Junta, fueron elevados al tribunal de San Juan, y el caso fué sometido mediante memorándum de las partes.

El 9 de abril de 1953, el tribunal a quo dictó Opinión y Sentencia declarando con lugar la petición de mandamus, ordenando a la Junta a registrar el nombre del peticionario como contador público y a expedirle a él una licencia para actuar como tal. La Junta ha apelado ante este Tribunal y ha señalado los siguientes errores:

"1. Erró el tribunal inferior al denegar la solicitud de desestimación o en la alternativa, de que se dictara sentencia sumaria a favor de la Junta demandada.

"2. Erró el tribunal inferior al resolver que la Junta de Contabilidad no tiene discreción para denegar el registro como contador público solicitado, a tenor con lo dispuesto en la sección 6 de la Ley 293 de 1945.

"3. Erró el tribunal inferior al resolver que la sentencia dictada en el caso de *Francisco Martínez Medina* v. *Junta de Contabilidad,* sobre Mandamus, Civil Núm. 49–2624, es de aplicación al presente recurso.

"4. Erró el tribunal inferior al no limitar su función revisadora al récord de los procedimientos administrativos para determinar si la conclusión de hecho de la Junta estaba sostenida por evidencia sustancial, alterando de esa manera la conclusión o determinación de hecho del organismo administrativo.

"5. Erró el tribunal inferior al no resolver que el récord administrativo contiene evidencia sustancial para sostener la conclusión o determinación de hecho de la agencia administrativa."

■■ Es innecesario el resolver si el tribunal de San Juan incurrió o no en error al denegar la moción de sentencia sumaria, ya que, finalmente, el tribunal consideró y resolvió el caso en sus méritos, y así lo haremos nosotros.   Pero la Junta apelante planteó ante el tribunal a quo, y ahora ante nos, que (1) el recurso de revisión provisto en la sección 11(*j*) de la ley citada no es aplicable a una resolución denegatoria de una licencia y (2) que ese recurso no puede ser sustituído por una petición de mandamus, en vista de las circunstancias de este caso.   La sección 11 de la Ley de Contabilidad Pública de 1945 dispone lo siguiente:

"Sección 11.—*Audiencias ante la Junta.—Notificación.—Procedimiento.—Revisión.—* (a) *Iniciación del Procedimiento.—*La Junta podrá iniciar procedimientos bajo esta Ley, bien *motu proprio* o mediante querella de cualquier otra persona.

"(b) *Notificación.—Su entrega y contenido.—*Al acusado se le notificará por escrito la naturaleza del cargo o de los cargos formulados contra él y la fecha y sitio de la vista que tendrá lugar ante la Junta para entender en tales cargos, con no menos de 30 días de anticipación a la fecha de dicha vista, bien personalmente, o remitiéndosele copia de dicha notificación por correo certificado a su última dirección conocida por la Junta.

"(c) *No comparecencia.—*Si después de haber sido notificado sobre la vista, según se dispone en la presente, el acusado dejare de comparecer y defenderse, la Junta podrá proceder a practicar la prueba presentada contra él y dictar la orden que la evidencia justifique, la cual será definitiva, a menos que el

acusado solicite la revisión de la misma según se provee en la presente; *Disponiéndose, sin embargo,* que si dentro de los 30 días siguientes a la fecha de cualquier orden se demuestra que la no comparecencia a defenderse se debió a causa justa y razonable, la Junta podrá reabrir el procedimiento y permitir al acusado someter evidencia a su favor.

"(d) *Abogados.—Testigos.—Repregunta.*—En toda audiencia el acusado podrá comparecer en persona y por medio de abogado, presentar evidencia y testigos en su defensa, carearse con los testigos, y examinar la prueba que se presente en su contra.   El acusado tendrá derecho, mediante solicitud a la Junta, a que se expida citación bajo apercibimiento para compeler la comparecencia de testigos a su favor.

"(e) *Citaciones bajo Apercibimiento (Subpoenas.)—Juramentos.*—La Junta, o cualquier miembro de la misma, podrá emitir citaciones bajo apercibimiento para compeler la comparecencia de testigos y la presentación de documentos, tomar juramentos y declaraciones, practicar la prueba y recibir documentos fehacientes en evidencia, en relación con la audiencia o en el acto de la misma, de acuerdo con esta Ley.   En caso de desobediencia a una citación bajo apercibimiento (*subpoena*), la Junta podrá invocar la ayuda de cualquier tribunal de Puerto Rico para requerir la comparecencia de testigos y la presentación de evidencia documental.

"(f) *Evidencia.*—La Junta no estará obligada por reglas técnicas de evidencia.

"(g) *Récord.*—Se tomará un récord taquigráfico de la vista y una transcripción de dicho récord quedará archivada en la Junta.

"(h) *Abogado de la Junta.*—En toda audiencia el Procurador General de Puerto Rico, o uno de sus auxiliares designado por él, comparecerá en representación de la Junta.

"(i) *Decisión.*—La decisión de la Junta será por mayoría de votos.

"(j) *Revisión por la Corte.*—Cualquier persona a quien afecte adversamente alguna orden de la Junta podrá obtener la revisión de la misma radicando por escrito una solicitud de revisión en la Corte de Distrito correspondiente dentro de los 30 días de dictada dicha orden.   La solicitud deberá expresar los fundamentos por los cuales se pide la revisión y solicitar que se modifique o sobresea, en todo o en parte, la orden de la Junta. Copia de dicha solicitud deberá entregarse inmediatamente a

cualquier miembro de la Junta, luego de lo cual la Junta certificará y radicará en la Corte una transcripción del récord sobre que se basó la orden apelada. El caso entonces se verá *de novo* a base del récord, pero las partes podrán radicar alegatos como en cualquier caso ordinario en derecho. La Corte podrá confirmar, enmendar o sobreseer, en todo o en parte, la orden de la Junta, o devolver el caso a la Junta, para el examen de nueva evidencia, y podrá, a su discreción, suspender los efectos de la orden de la Junta hasta la determinación del caso. La decisión de la Corte tendrá la fuerza y el efecto de un decreto en equidad."

Aunque la mayor parte de la sección 11 transcrita se refiere a procedimientos de querellas y revocaciones de licencias, sin embargo, el inciso (*j*) concede el poder de revisión por la Corte a cualquier persona afectada adversamente por "alguna orden de la Junta". El inciso (*j*) es de carácter general y, aunque está colocado en la sección 11 que se refiere, en su mayor parte, a ciertos procedimientos específicos, tal inciso debe ser considerado como aplicable a órdenes denegatorias de licencias. El peticionario en este caso presentó un recurso de mandamus, pero ese recurso debe ser considerado como uno de revisión judicial, y, por lo tanto, inatacable, considerando especialmente el hecho de que la petición de mandamus fué presentada en el tribunal de San Juan dentro de los treinta días señalados por el inciso (*j*) como término para solicitar la revisión de una orden de la Junta.

■■ Con respecto a los méritos intrínsecos de este caso, la sección 6 de la Ley de Contabilidad Pública determina lo siguiente:

"Sección 6.—*Contadores Públicos; Su Registro.*—Cualquier persona que (*a*) sea residente de Puerto Rico o tenga un sitio de negocio o esté empleado en el mismo; (*b*) haya cumplido veintiún años de edad; (*c*) goce de buena conducta moral, y (*d*) cumpla con los requisitos de la subdivisión (1) o (2) de esta sección, podrá registrarse como contador público con la Junta en o antes del día 30 de noviembre de 1945.

"(1) Toda persona que en la fecha de la aprobación de esta Ley se presentaba al público como contador público y estaba de-

dicada a la práctica de la contabilidad pública dentro de esta Isla, como su principal ocupación; *Disponiéndose,* que quedarán cubiertos por las disposiciones de esta sección, aquellas personas que a la fecha de aprobación de esta Ley, hubieran ejercido la profesión de contador al servicio del Gobierno de Puerto Rico en funciones de auditor, contador, inspector o examinador de cuentas durante un término no menor de cinco años.

"(2) Toda persona en el servicio de las fuerzas armadas de los Estados Unidos o de cualquiera de las Naciones Unidas que inmediatamente antes de entrar al servicio se presentaba al público como contador público y se dedicaba a la práctica de la contabilidad pública, como su principal ocupación. En el caso de cualquiera de dichas personas que esté sirviendo en las fuerzas armadas de los Estados Unidos o de cualquiera de las Naciones Unidas en la fecha en que esta Ley entre en vigor, el término para el registro se prorrogará por un período de doce meses a partir de la fecha en que dicha persona sea honrosamente licenciada del servicio.

"Toda persona así registrada y que posea una licencia expedida de acuerdo con la sección 8 de esta Ley, ostentará el título de 'contador público' y se conocerá como tal."

La sección 9 determina, en parte, que la Junta expedirá licencia para dedicarse a la práctica de la contabilidad pública en Puerto Rico a toda persona registrada bajo la sección 6.

Las disposiciones transcritas no contienen una definición específica del término "contador público"; aunque el lenguaje usado demuestra que se refiere a "toda persona que se presente al público" como contador público. En el caso de autos la Junta denegó la solicitud del peticionario a base de su criterio al efecto de que el peticionario fué empleado de la firma Tybor Stores, Inc., por un período de tres años, dedicando la mayor parte de las horas normales de trabajo en el desempeño de sus funciones como empleado de esa firma y que, por lo tanto, él no se dedicaba a la práctica de la contabilidad pública y sí a la práctica de la contabilidad privada, como su principal ocupación. Aparentemente la Junta definió "contabilidad pública" como dedicación a la práctica de la contabilidad como profesional, y no como empleado, y que siendo

la principal ocupación del peticionario su labor como empleado, él no cumplió con los requisitos de la sección 6, aún si esa labor era de contador. Se hace preciso el formular previamente una orientación general en cuanto al alcance y extensión de las facultades de la Junta en cuanto a la concesión o denegación de licencias a presuntos contadores públicos. La determinación de los límites y fronteras de tales poderes administrativos de la Junta sirve de base o puntal para la comprobación de la necesidad, extensión y contornos de cualquier posible recurso de revisión.

Se trata en este caso de licencias reglamentadas por el Estado. El legislador válidamente ha delegado en una Junta la concesión y denegación de tales licencias y, al igual que otras entidades administrativas, la Junta debe tener amplias facultades discrecionales para aquilatar los hechos y factores relevantes en vista, especialmente, de la experiencia y los conocimientos especializados de los componentes de esas entidades. Generalmente, se puede conceder a una junta administrativa el poder de comprobar y calificar la idoneidad y aptitudes de solicitantes de licencias, al igual que los hechos y condiciones requeridas por el estatuto, y de determinar si las disposiciones de la ley han sido cumplidas, de acuerdo con la significación generalmente aceptada de los términos del estatuto. 33 Am. Jur. 377, 378, 379. El legislador establece las normas generales, tan amplias que puedan dejar al administrador un margen adecuado de libertad para complementar las normas legislativas mediante la aplicación de su juicio experimentado, pudiendo desenvolverse la agencia en un área de análisis, apreciación y discreción administrativa, siempre y cuando que esa discreción tenga una base de razonabilidad. *Secretary of Agriculture* v. *Central Roig Co.*, 338 U. S. 604, 611; *Gray* v. *Powell*, 314 U. S. 402, 412; *Board* v. *Hearst Publications*, 322 U. S. 111; *Board of Governors* v. *Agnew*, 329 U. S. 441; 58 Harv.L.Rev. 70, *Review of Findings of Administrators, Judges, and Juries: A Comparative Analysis.*

Pero el respeto judicial a la relativa libertad de acción de los administradores no puede llegar hasta el extremo de la indiferencia pasiva y la condescendencia total. El "desideratum" de autonomía administrativa no justifica una independencia absoluta de la intervención judicial. El área de discreción debe tener linderos jurídicos. El territorio de actuación administrativa debe tener fronteras judiciales. La discreción administrativa no es absolutamente ilimitada. La discreción de una junta debe tener una base racional en la prueba. Las decisiones de una junta en cuanto a concesión ó denegación de licencias no pueden ser arbitrarias, caprichosas, fraudulentas o desprovistas de base razonable en la prueba. 33 Am. Jur. 379; *McDonough* v. *Goodcell*, 13 Cal.2d 741; *Riley* v. *Chambers*, 181 Cal. 589; *Jaffarian* v. *Murphy*, 183 N. E. 110; *Hazel Park Racing Ass'n* v. *Inglis*, 58 N.W.2d 241; *American Committee on Maternal Welfare* v. *Mangan*, 14 N.Y.S.2d 39, confirmado en 27 N.E.2d 278; *Farrand* v. *State Medical Board*, 85 N.E.2d 113. Prevalece un criterio de razonabilidad en el ejercicio de la discreción administrativa. 62 Harv.L.Rev. 1058, 1059.

De la discusión general que hemos desarrollado anteriormente surge que la definición que pueda haber adoptado la Junta en cuanto al término o concepto estatutario "contabilidad pública" no es obligatoria sobre los tribunales, y que la determinación de la Junta en ese sentido puede ser dejada sin efecto judicialmente si la definición administrativa, aplicada a los hechos del caso, es contraria a la verdadera significación del referido término o concepto, siendo función relevante de los tribunales el comprobar tal significación auténtica.

Ahora bien, el "contador público" es aquél que se ofrece al público como contador, esto es, el que tiene la aptitud y el poder de prestar sus servicios como contador a distintas personas o miembros del público. El hecho de que él preste la mayor parte de sus servicios y dedique la mayor parte de

su tiempo a un solo cliente, no excluye la posibilidad de que él *pueda* también prestar servicios a otras personas. Al requerir la sección 6 que la principal ocupación de determinado peticionario sea la de "contador público", ello significa que él principalmente tenga esa aptitud, y dedique la mayor parte de su tiempo a labores de contador, y no a una ocupación disímil o distinta, como por ejemplo, la de ingeniero o médico. No podemos ignorar la realidad de que un contador de reconocida competencia dedique la mayor parte de su tiempo y esfuerzos a un solo cliente, y ello no implica que su principal ocupación no sea la de contador público. Ese cliente que ocupa la mayor parte de la atención del contador es también parte del público. El concepto de "principal ocupación" no requiere una distribución general del tiempo y labor del contador.

El aquí peticionario declaró personalmente ante la Junta, y sometió varias declaraciones juradas. Es innecesario el discutir la virtualidad o eficacia probatoria de esas declaraciones, ya que ellas sirvieron meramente para corroborar la declaración oral del peticionario. También se admite en este caso que las labores del peticionario eran las de contador. El problema es al efecto de si eran de contador *público*. Declaró el peticionario, entre otras cosas, que él era Tesorero de la Tybor Stores, Inc., a cargo de toda la contabilidad; allí instaló sistemas de contabilidad, intervenía en las cuentas, preparaba estados de ganancias y pérdidas, preparaba planillas de contribuciones sobre ingresos, preparaba informes financieros; que él dedicaba 40 horas en la semana y ocho diarias a su labor con la Tybor y recibía el mayor ingreso suyo de la Tybor. Pero también declaró el peticionario que él también tenía otros clientes (aproximadamente diez), a quienes él también prestaba sus servicios como contador, siendo la naturaleza de ese trabajo similar al que él le prestaba a la Tybor, mencionando el peticionario el nombre de todos esos clientes. Declaró además que la Tybor lo había

autorizado a él a prestar esos servicios de contabilidad a esos otros clientes, y que esa autorización era parte del convenio de trabajo concertado entre él y la Tybor.

Aun asumiendo que el peticionario hubiese sido un empleado de la Tybor, como cuestión de hecho él rendía servicios de contabilidad a otros clientes, esto es, al público. Él estaba autorizado por la Tybor a prestar servicios como contador al resto del público, además de la Tybor. Él no estaba obligado contractualmente a rendirle servicios exclusivamente a la Tybor. Esto es, él tenía la aptitud y el poder de prestar servicios de contabilidad al público y, como cuestión de hecho, él rendía tales servicios al público. Su principal ocupación era la de ofrecerle sus servicios al público.

En vista de lo expuesto, la Junta no actuó de acuerdo con la sección 6 de la Ley de Contabilidad Pública, y aplicó a los hechos de este caso una definición incorrecta de las disposiciones de la sección 6. Su resolución no tuvo una base racional en la prueba.

En el caso de *Frazer* v. *Shelton*, 150 N. E. 696, un estatuto de Illinois definía específicamente el término "contabilidad pública" como la prestación de servicios de contabilidad a más de un patrono. En Puerto Rico no existe esa definición estatutaria específica, y, de todos modos, en el caso de autos el peticionario tenía varios clientes. En el caso de *Roberts* v. *Hosking*, 28 P.2d 199, el estatuto de Montana define el término "contador público" como refiriéndose a un contador que ofrece sus servicios profesionales al público en general. Se resuelve que tal disposición estatutaria es aplicable solamente a aquellos contadores que se dedican a servirle a cualquier miembro del público que necesite tales servicios, y no a aquellos empleados en una sola firma comercial. El caso citado es distinto al de autos, y no es aplicable a las circunstancias de este caso.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente, Sr. Snyder, y los Jueces Asociados Sres. Negrón Fernández y Sifre disintieron.